# In the United States Court of Federal Claims

No. 19-558 L

(Filed: February 1, 2021)

```
* * * * * * * * * * * * * * * * *  *
                                    *
NICHOLAS ALBANO, II, et al.,        *
                                    *
                  Plaintiffs,       *
                                    *
      v.                            *
                                    *
THE UNITED STATES,                  *
                                    *
                  Defendant.        *
                                    *
* * * * * * * * * * * * * * * * *  *
```

*Meghan Sue Largent*, Lewis Rice, LLC, of St. Louis, Missouri, for plaintiff.

*Elizabeth Rose McGurk*, Trial Attorney, Environmental and Natural Resources Division, Department of Justice, with whom were, *Lawrence VanDyke*, Deputy Assistant Attorney General, and *Jean E. Williams*, Deputy Assistant Attorney General, all of Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

**SOMERS**, Judge.

      This case is brought by a group of plaintiffs who own property along a railroad corridor near Atlanta, Georgia. Amended Complaint, ECF No. 5 ¶¶ 21–38 ("Amended Compl."). Plaintiffs allege that "compensation is due from the federal government" under the Just Compensation Clause of the United States Constitution. *Id.* ¶¶ 2, 19–20. Specifically, plaintiffs contend that the United States Surface Transportation Board's ("STB") conversion of parts of the corridor into a recreational trail and preservation of the railroad's easement, pursuant to the National Trails System Act ("Trails Act"), constitutes a Fifth Amendment taking. *Id.* ¶¶ 63–75.

      Before the Court is the government's motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). As explained below, the Court holds that the decision of the Superior Court of Fulton County, Georgia, in *Atlanta Dev. Auth. v. Ragan, et al.*, Civil Action File No. 2016-CV-273389 (Super. Ct. Fulton Cty., Ga., Sept. 12, 2016), does not preclude plaintiffs from pursuing their claims in this Court, because under Georgia law, which this Court is required to apply under 28 U.S.C. § 1738, the decision in *Ragan* has no preclusive effect on the instant litigation. Accordingly, the government's motion to dismiss is **DENIED**.

## I.  BACKGROUND

The land in dispute in this Trails Act takings case is part of a former railroad corridor in Atlanta, Georgia, better known as the "Decatur Street Belt" or "Line" ("Line").  Amended Compl. Ex. 1 at 28.  The Georgia Air Line Railway Company acquired its interest in the property that established the Line by way of a "right of way" deed from Jerome Bearse in 1869.  Amended Compl. ¶3.  Since then, several railroad companies have used the Line, most recently Norfolk Southern Railway.  *Id.* at ¶6; Amended Compl. Ex. 1 at 28-29.  On March 27, 2017, Norfolk Southern filed a request to abandon a portion of the Line that abuts and allegedly underlies plaintiffs' property.  Amended Compl. ¶7; Amended Compl. Ex. 1.  Several months later, Atlanta BeltLine, a Georgia non-profit and instrumentality of the City of Atlanta, requested the issuance of a Notice of Interim Trail Use or Abandonment ("NITU") pursuant to the Trails Act.  Amended Compl. ¶8; Amended Compl. Ex. 2.  On September 28, 2017, the STB issued a NITU.  Amended Compl. ¶9; Amended Compl. Ex. 3.

Approximately a year before the NITU was issued, the Atlanta Development Authority and Atlanta BeltLine brought an action in state court against numerous landowners along the Line (several of whom are also plaintiffs in the instant case) seeking a declaratory judgment as to ownership of the disputed property, quiet title, ejectment of encroachments, an injunction to permanently stop encroachments, and liability for trespass.  *See Atlanta Dev. Auth. v. Ragan, et al.*, Civil Action File No. 2016-CV-273389 (Super. Ct. Fulton Cty., Ga., Sept. 12, 2016).  In that litigation, the defendant property owners argued, among other things, that the Bearse deed transferred only an easement to the disputed property to the state court plaintiffs' predecessors-in-interest, thereby depriving those plaintiffs of any claim to title because Norfolk Southern's purported abandonment of the alleged easement reverted any property interest back to the adjacent landowners along the Line.  Order Granting Mot. for Summary Judgment at 3, *Atlanta Dev. Auth. v. Ragan, et al.*, Civil Action File No. 2016-CV-273389 (Super. Ct. Fulton Cty., Ga., Sept. 19, 2017).  Without accompanying analysis, the state trial court rejected this argument finding that "the 1869 Deed conveyed fee simple title" to the original railway and, consequently, to any successors in interest.[1]  *Id.*  In the alternative, the court also held that even if "the 1869 Deed only conveyed an easement . . . there is no evidence that Norfolk Southern Railway Company has filed a notice of consummation of abandonment with the STB," apparently making defendants' arguments irrelevant according to the court's understanding of the issue.[2]  *Id.*

In its motion to dismiss, the government argues that this Court "should accept the preclusive effect of the determination of the [Fulton County Superior Court] and dismiss Plaintiffs' complaint," because the state court "held that these Plaintiffs have no valid claim to the land in question because it was conveyed to the railroad in fee," thereby depriving plaintiffs

---

[1] Soon after the Fulton County Superior Court's decision, in October 2017, a different group of property owners along the Line brought a Trails Act takings claim before this Court.  *See Ansley Walk Condo. Ass'n, Inc. v. United States,* No. 17-1600 (Fed. Cl. Oct. 10, 2017).  Unlike the Fulton County Superior Court, the Federal Claims judge in that case has determined that the Bearse deed conveyed an easement to the original railroad, not a fee simple interest.  *Ansley Walk Condo. Ass'n, Inc. v. United States*, 142 Fed. Cl. 491, 499-502 (2019).

[2] Consummation of the abandonment occurred on October 17, 2017. Amended Compl. Ex. 4 (*Norfolk Southern Railway Company—Abandonment Exemption—In Atlanta Georgia*, STB Docket No. AB-290 (Sub-No. 388X) (filed Oct. 17, 2017)).

2

of both standing and the ability to state a legal claim.  Def.'s Mot. to Dismiss, ECF No. 7, at 6.  Although the government acknowledges that "preclusion in Georgia requires mutual identity of parties, and the United States was not a party to the *Ragan* case . . . and is not in privity with Atlanta BeltLine," the government nonetheless contends that "applying the Georgia court's ruling in this instance will promote judicial economy and avoid the absurd result of two different courts interpreting these same Plaintiffs' property interests in conflicting ways."  *Id.*  In support, the government cites the Supreme Court, the Federal Circuit, and an opinion of an intermediate Georgia state appeals court that is critical of strict estoppel principles.  *Id.* at 7-9.  For prudential reasons, the government urges this Court to follow these cases, which support the modern trend of nonmutual collateral estoppel, and ignore the non-preclusive effect the *Ragan* judgment would receive in a Georgia court.

In opposition, plaintiffs argue that this Court has no discretion in the matter.  Instead, plaintiffs contend that every federal court is "commanded 'to accept the rules chosen by the State from which the judgment is taken.'"  Pls.' Opp. to Mot. to Dismiss, ECF No. 8, at 8 (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).  Because Georgia state law requires strict mutuality of parties to apply collateral estoppel—and the United States was neither a party in *Ragan*, nor in privity with any of the parties—plaintiffs argue that this Court is not bound by *Ragan*'s interpretation of the Bearse deed.  *Id.* (citing GA CODE. ANN. § 9-12-40).  Additionally, plaintiffs suggest that *Ragan*'s treatment of the property interest conveyed by the Bearse deed indicates that the issue was not "fully addressed and adjudicated in a manner such that a proceeding here 'would be a waste of judicial resources,'" *id.* at 4 (quoting Def.'s Mot. to Dismiss at 1), and that even if this Court were permitted to apply collateral estoppel, it should not do so because the title issue was not adequately decided in the state court litigation to lend a preclusive effect to the holding.  *Id*. at 4.

In reply, the government maintains that the caselaw it cites empowers federal courts to "disfavor mutual identity of parties" in cases in which state estoppel rules so demand, because "judicial resources will be misallocated and judicial economy will be thwarted if Plaintiffs are allowed to relitigate the question of whether they have a cognizable property interest in the rail corridor."  Def.'s Reply, ECF No. 9, at 2.  Ultimately, the government stakes its motion on the view that this Court is not bound to apply Georgia's preclusion rules and thus should not apply the Georgia rule as doing so will lead to "a perverse effect of granting these Plaintiffs a property interest that a Georgia court has specifically held that they do not have."  *Id.*

## II. DISCUSSION

### A.  Legal Standard

Under RCFC 12(b)(1), this Court must dismiss any claim that does not fall within its subject-matter jurisdiction.  When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court must accept as true all factual allegations made by the non-moving party and draw all reasonable inferences in the light most favorable to that party.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002) (stating that on a motion to dismiss for lack of subject-matter jurisdiction the court is to

view "the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate").

Even if the plaintiff asserts a claim that falls within the Court's jurisdiction, the plaintiff must still present a valid claim on which the Court can grant relief.  RCFC 12(b)(6).  "When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor."  *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791 (2014) (citing *Scheuer*, 416 U.S. at 236; *Pixton*, 291 F.3d at 1326).  Granting a motion to dismiss for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B. Analysis

The crux of the government's argument in support of its motion to dismiss is its contention that this Court has the discretion to ignore Georgia state preclusion law in this instance because applying it would mean that the Court will have to re-litigate an issue that has already been adjudicated in state court.  The government's argument, however, is foreclosed by the full faith and credit statute and precedent from both the Supreme Court and the Federal Circuit applying that statute.

The full faith and credit statute requires that state judicial proceedings be given "the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738.  The Supreme Court has made clear that "this statute *directs* a federal court to refer to the preclusion law of the State in which judgment was rendered."  *Marrese*, 470 U.S. at 380 (emphasis added).  Indeed, according to the Supreme Court, "[i]t has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.  Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."  *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-482, (1982); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("[T]hough the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.").  Federal Circuit precedent is also clear on this point: "28 U.S.C. § 1738 . . . requires that state court judgments be given the same preclusive effect in later federal actions as they would be given under the laws of the state in which the judgments were rendered."  *Graybill v. United States Postal Service*, 782 F.2d 1567, 1571 (Fed. Cir. 1986).

The government cites no relevant precedent to convince the Court otherwise.  While the government cites precedent for the proposition that "[i]n any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which

the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources," Def.'s Mot. to Dismiss at 6 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill Found.*, 402 U.S. 313, 329 (1971)), the cases cited by the government involve the Supreme Court critiquing the mutuality principle in the context of a federal court addressing the preclusive effect of an earlier federal judgment. In *Blonder-Tongue*, the Supreme Court was faced with the question of the preclusive effect of an earlier decided patent case. 402 U.S. at 315. Although the Supreme Court reexamined the efficacy of strict mutuality, it did so only in the context of federal patent cases. *Id.* at 334. The government also cites *Parklane Hosiery v. Shore* for the same proposition, but once again the Supreme Court only addressed the mutuality principle in the context of a previous federal judgment. 439 U.S. 322, 324 (1979). Moreover, the lone Federal Circuit case cited by the government, *In re Freeman*, does not address the effect of a state court judgment. 30 F.3d 1459 (1994).

Although the government is slightly more on-point in citing *Montana v. United States*, because it involved the preclusive effect of two earlier state court judgments, that case did not present a question of whether to apply state or federal preclusion rules. 440 U.S. 147 (1979). The case would have been barred regardless of whether mutual or nonmutual estoppel rules were applied. *See id.* at 155 ("Thus, although not a party, the United States plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel."); *see also United States v. Montana*, 437 F.Supp. 354, 361 (D. Mont. 1977) (Kilkenny, J., dissenting) (noting that the federal government conceded it was the real party in interest in *Peter Kiewit Sons' Co. v. State Board of Equalization*, 505 P.2d 102 (Mont. 1973)). In fact, the Montana Supreme Court had already applied collateral estoppel to preclude the issue in *Montana* from being relitigated in a state court case brought by a party that was indisputably in privity with the United States. *See Peter Kiewit Sons' Co. v. Department of Revenue*, 531 P.2d 1327 (Mont. 1975).

In short, although the federal courts may have abandoned the mutuality principle for cases involving earlier federal judgments for the reasons cited by the government, the government has not cited, and the Court is not aware of, any precedent establishing an exception to 28 U.S.C. § 1738 for earlier state court judgments. Consequently, this Court must apply Georgia preclusion law to the *Ragan* judgment such that it would have the same preclusive effect as if the instant case were being heard by another Georgia state court.

To that end, Georgia law is clear: "In Georgia, mutual identity of parties is required for collateral estoppel, which means that there must be an identity of parties or their privies in both actions." *Minnifield v. Wells Fargo Bank, N.A.*, 771 S.E.2d 188, 192 (Ga. Ct. App. 2015) (citing *Body of Christ Overcoming Church of God v. Brinson*, 696 S.E.2d 667, 668-69 (Ga. 2010)); *see also Waldroup v. Greene Cty. Hosp. Auth.*, 265 Ga. 864, 867 (Ga. 1995) ("[C]ollateral estoppel requires the identity of parties or their privities in both actions."). Notwithstanding the fact that some Georgia courts have criticized this strict mutuality requirement, it remains the controlling rule. *See, e.g., Wickliffe v. Wickliffe*, 227 Ga. App. 432, 434-35 (Ga. Ct. App. 1997) ("While the modern trend regarding mutuality is perhaps the better position, only our Supreme Court has the authority to overrule its earlier holdings and to adopt the modern trend in Georgia."). Indeed, the Georgia state legislature has even codified this strict mutuality requirement. GA CODE ANN. § 9-12-40 ("A judgment of a court of competent jurisdiction shall be conclusive between the same

5

parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.").

As a result, because the United States was neither a party to *Ragan*, nor in privity with a party to that litigation (in fact, the government does not even argue that it was a party or in privity with a party to *Ragan*), under Georgia law, which, as discussed above, this Court is bound to apply in this case, the *Ragan* judgment has no preclusive effect on this Court.[3]  Although the government may find it "absurd" that this result means plaintiffs could have a property interest in the Line that a Georgia state court has held that they do not have, a "perverse effect" will arise either way.[4]  If the *Ragan* judgment carried a preclusive effect in this case, the Georgia state-court interpretation of the Bearse deed would still be at odds with the *Ansley Walk* interpretation, ostensibly giving different landowners conflicting property interests derived from the same underlying deed.  In short, the result the government finds "absurd" must be tolerated because "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." *Allen*, 449 U.S. at 96 (citing 28 U.S.C. § 1738).

---

[3] It is clear that privity does not exist between the United States and any of the parties to *Ragan* under Georgia law.  *Ragan* was an action seeking a declaration as to ownership, quiet title, ejectment of the private landowners from the property, an injunction to permanently bar encroachments on the property, and liability for trespass.  In addition, at the time *Ragan* was filed and when summary judgment was issued, as the Fulton County Superior Court noted, the abandonment of the line had only been initiated.  It is hardly the case that the plaintiffs in *Ragan* can be said to have "represented the same legal right" in the state court action to create a privity of interests with the United States in this case.  *See Minnifield*, 331 Ga. App at 516; *Pinkard v. Morris*, 215 Ga. App. 297 (Ga. Ct. App. 1994) (Privity occurs when a party's interests are "fully congruent" with "a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right.").

Moreover, even if the *Ragan* judgment could carry a preclusive effect in this case because mutuality or privity was present, it is not clear estoppel would be appropriate.  Under Georgia law, "the issue sought to be precluded must actually have been litigated and decided in the first action before collateral estoppel would bar it from being considered in the second action, or the issue necessarily had to be decided in order for the previous judgment to have been rendered." *Karan, Inc. v. Auto-Owners Ins. Co.,* 629 S.E.2d 260, 263 (Ga. 2006).  In *Ragan*, for most of the course of litigation, the defendant landowners "asserted title claims based on adverse possession and STB's failure to approve a prior conveyance of the Property."  Order Granting Mot. for Summary Judgment at 2, *Atlanta Dev. Auth. v. Ragan, et al.*, Civil Action File No. 2016-CV-273389 (Super. Ct. Fulton Cty., Ga., Sept. 19, 2017).  Only at the eleventh hour did the defendant landowners change their argument to assert that the Bearse deed transferred an easement.  *Id.*  It is possible that a Georgia court would find that the interest conveyed by the Bearse deed was not adequately litigated to lend a preclusive effect if a related case was brought in state court.  Even if it was adequately litigated, it is also possible that *Ragan*'s lack of analysis for its finding that the Bearse deed conveyed an interest in fee indicates that the issue was not necessarily decided, especially given the presence of an alternative holding.  *See id.* at 4; *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1268 (11th Cir. 2011) (Commenting that with regard to Georgia preclusion law: "[t]he essential role of this 'necessarily decided' requirement is that it prevents judgments that rest on ambiguous grounds from having issue preclusive effect.").  In short, even if the United States were in privity with the plaintiffs in *Ragan*, it is not clear that the *Ragan* judgment would carry any preclusive effect on the instant case.

[4] The proper course, if the government finds this result "absurd" or to have a "perverse effect," is to work with Congress to change the full faith and credit statute, not to file a motion urging this Court to ignore federal law and binding precedent interpreting that law.

### III. CONCLUSION

For the forgoing reasons, the Court concludes that plaintiffs are not precluded from bringing the current action by an earlier state court judgment construing the relevant property interest, because 28 U.S.C. § 1738 requires this Court to accept, in this case, the preclusion rules chosen by Georgia and, under those rules, collateral estoppel does not apply. Accordingly, the government's motion to dismiss is **DENIED**. The government shall **FILE** an answer to the plaintiffs' complaint on or before February 16, 2021.

**IT IS SO ORDERED.**

s/ Zachary N. Somers
**ZACHARY N. SOMERS**
Judge