# In the United States Court of Federal Claims

No. 19-558 L

(Filed: February 1, 2022)

```
* * * * * * * * * * * * * * * * * * * *
                                      *
NICHOLAS ALBANO, II, et al.,          *
                                      *
                  Plaintiffs,         *
                                      *
         v.                           *
                                      *
THE UNITED STATES,                    *
                                      *
                  Defendant.          *
                                      *
* * * * * * * * * * * * * * * * * * * *
```

*Meghan S. Largent* and *Lindsay S.C. Brinton*, Lewis Rice LLC, of St. Louis, Missouri, for Plaintiffs.

*Elizabeth McGurk*, Trial Attorney, Environment & Natural Resources Division, Department of Justice, with whom were, *Dustin J. Weisman*, Trial Attorney, and *Todd Kim*, Assistant Attorney General, all of Washington, D.C., for Defendant.

## OPINION AND ORDER

SOMERS, Judge.

This rails-to-trails case presents the Court with one principal issue: whether a deed executed by landowner Jerome Bearse in April 1869 ("Bearse deed") conveyed land in Fulton County, Georgia, to a railroad company in fee simple or, instead, conveyed an easement for railroad purposes. This issue—in fact, the deed itself—is no stranger to this Court. Two judges of this Court have previously ruled that under applicable Georgia law, the Bearse deed conveyed an easement to the grantee railroad, that the scope of the easement did not encompass use as a public recreational trail under the National Trails System Act ("Trails Act"), 16 U.S.C. § 1241, *et seq.*, and, therefore, conversion of the easement to a recreational trail effected a taking under the Fifth Amendment.[1]  For the reasons articulated below, the undersigned reaches the same result. Accordingly, the Court grants Plaintiffs' motion for partial summary judgment on liability and denies the government's cross-motion for summary judgment.

---

[1] *See Price v. United States*, 156 Fed. Cl. 281, 301 (2021); *Ansley Walk Condo. Ass'n v. United States*, 142 Fed. Cl. 491, 500 (2019).

## BACKGROUND

### A.    The Statutory and Regulatory Context of the Trails Act

The Trails Act reflects "the culmination of congressional efforts to preserve shrinking rail trackage by converting unused rights-of-way to recreational trails." *Preseault v. I.C.C.*, 494 U.S. 1, 5 (1990) ("*Preseault I*"). This temporary, or interim, use of established but unused railroad rights of way functions "to preserve [such] rights-of-way for future reactivation of rail service," should the need arise. 16 U.S.C. § 1247; *see also Caquelin v. United States*, 959 F.3d 1360, 1363 (Fed. Cir. 2020) ("The [Trails Act] provides for blocking of 'abandonment,' however, despite the absence of any rail use, present or in prospect, if a proper entity agrees with the railroad to take over the rail right-of-way for trail use.") (citation omitted). According to the Trails Act, "if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247. Commonly known as "railbanking," this process "allows a railroad to negotiate with a state, municipality, or private group (the 'trail operator') to assume financial and managerial responsibility for operating the railroad right-of-way as a recreational trail." *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004) (citing *Preseault I*, 494 U.S. at 6–7).

The Surface Transportation Board ("STB"), the federal agency with jurisdiction "to regulate the construction, operation, and abandonment of most rail lines in the United States," oversees the railbanking process. *Id.* at 1228. The Trails Act "does not specify in detail what procedures are to be followed . . . . Pursuant to implementing regulations promulgated by the STB . . . , the typical railbanking process begins when a rail carrier files an abandonment application or . . . a request for an exemption" with the STB. *Id.* at 1229–30 (citing 49 U.S.C. §§ 10903, 10502; *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 138 (D.C. Cir. 1998)). "If the STB approves the request for an exemption, it will publish a notice of exemption in the Federal Register." *Id.* at 1230 (citing 49 C.F.R. § 1121.4(b)).

Upon notice in the Federal Register, a potential trail operator may file with the STB a "request for interim trail use" pursuant to 49 C.F.R. § 1152.29(a), which must include certain criteria for the STB's consideration. "If the railbanking petition meets these criteria, and the railroad agrees to negotiate with the petitioner and so communicates to the STB within ten days of the filing of the trail use petition, the STB will issue a Notice of Interim Trail Use or Abandonment ('NITU')." *Id.* at 1230 (citing 49 C.F.R. §§ 1152.29(b)(2), (d)). The NITU "permits the railroad to discontinue service, cancel tariffs, and salvage track and other equipment, 'consistent with interim trail use and rail banking' without consummating an abandonment and the NITU extends indefinitely to permit interim trail use once an 'agreement' is reached between the railroad and the trail operator." *Id.* (citing 49 C.F.R. § 1152.29(d)(1)). Throughout the duration of a rail line's conversion to, and use as, a recreational trail, the STB "retains jurisdiction for possible future railroad use, and state law reversionary interests that would normally vest upon abandonment are blocked." *Id.* (citing *Preseault I*, 494 U.S. at 8). Thus, the question in most rails-to-trails cases is whether a reversionary interest exists at all.

## B.       Plaintiffs and the Disputed Property Interest

Plaintiffs here are thirty-two landowners who own twenty parcels of land in Atlanta, Georgia, situated "adjacent to and underlying a one-mile railroad right-of-way originally established by the Georgia Air Line Railway in the mid-1800s."  ECF No. 29 at 1 ("Pls.' Mot. Summ. J.").  The right of way is part of a former railroad corridor known as the "Decatur Street Belt" or "Line" ("Line").  ECF No. 30 at 6 ("Gov.'s Cross-Mot. Summ. J.").  The Georgia Air Line Railway Company ("Railroad") acquired its interest in the property at issue in this case via a deed from landowner Jerome Bearse in April 1869.  Pls.' Mot. Summ. J. at 5; Gov.'s Cross-Mot. Summ. J. at 6.  Since then, several railroad companies have used the Line, most recently Norfolk Southern Railway.  Pls.' Mot. Summ. J. at 1 n.1; Gov.'s Cross-Mot. Summ. J. at 6.  On March 27, 2017, Norfolk Southern filed a request to abandon a .68-mile section of the Line that abuts, and allegedly runs across, Plaintiffs' property.  Pls.' Mot. Summ. J. at 3; Gov.'s Cross-Mot. Summ. J. at 7.  Several months later, Atlanta BeltLine, a Georgia non-profit and instrumentality of the City of Atlanta, requested the issuance of a NITU pursuant to the Trails Act, and on September 28, 2017, the STB issued a NITU.[2]  Pls.' Mot. Summ. J. at 4–5; Gov.'s Cross-Mot. Summ. J. at 7.

Thereafter, Plaintiffs filed suit in this Court alleging that the STB's issuance of the NITU constituted a taking of their property by the federal government because, as a matter of Georgia law, the Railroad "held only an easement for railroad purposes over all thirty-two Plaintiffs' properties," Pls.' Mot. Summ. J. at 13, and "[t]he easement granted by the Bearse Deed did not include use of the land for public recreation," *id*. at 24.  "[A]ccordingly, the federal government's invocation of Section 1247(d) of the Trails Act caused a categorical physical taking of [Plaintiffs'] property entitling them to 'just compensation.'"  *Id*. at 3.

In cross-moving, the government argues that "the Court should grant summary judgment in favor of the United States because the source deed at issue in this case . . . conveyed fee simple title to the railroad rather than an easement.  Plaintiffs therefore lack [a] property interest in . . . the adjacent corridor."  Gov.'s Cross-Mot. Summ. J. at 8.  Alternatively, the government argues that "[i]f the Court holds that the Bearse deed granted an easement rather than a fee simple interest, the easement is not limited to railroad purposes.  Consequently, the scope of the easement is broad enough to encompass trail use."  *Id*. at 29.

---

[2] Approximately a year before the NITU was issued, the Atlanta Development Authority and Atlanta BeltLine brought an action in state court against numerous landowners along the Line (several of whom are also plaintiffs in the instant case) seeking a declaratory judgment as to ownership of the disputed property, quiet title, ejectment of encroachments, an injunction to permanently stop encroachments, and liability for trespass.  *See Atlanta Dev. Auth. v. Ragan, et al.*, Civil Action File No. 2016-CV-273389 (Super. Ct. Fulton Cty., Ga., Sept. 12, 2016).  In that litigation, the defendant property owners argued, among other things, that the Bearse deed transferred only an easement to the state court plaintiffs' predecessors-in-interest, thereby depriving the plaintiffs of any claim to title because Norfolk Southern's purported abandonment of the alleged easement reverted any property interest back to the adjacent landowners along the Line.  ECF No. 30-6 (Order Granting Mot. for Summ. J. at 3, *Atlanta Dev. Auth. v. Ragan, et al.*, Civil Action File No. 2016-CV-273389 (Super. Ct. Fulton Cty., Ga., Sept. 19, 2017)).  Without accompanying analysis, the state trial court rejected that argument, finding that "the 1869 Deed conveyed fee simple title" to the original railway and, consequently, to any successors in interest.  *Id*. at 4.  In the alternative, the court also held that even if "the 1869 Deed only conveyed an easement . . . there is no evidence that Norfolk Southern Railway Company has filed a notice of consummation of abandonment with the STB . . . ."  *Id*.

The deed at the core of this dispute is dated April 29, 1869, conveying an interest from Jerome Bearse to the Railroad.  Pls.' Mot. Summ. J. at 5; *see also* ECF No. 27 ("The parties agree that . . . the railroad acquired its interest in the subject railroad corridor by the deed from Jerome Bearse to the Georgia Air Line Rail Road recorded January 24, 1870, in Book N, Page 377 of the Fulton County, Georgia Recorder of Deeds' office.").  In relevant part, the deed states:

> In consideration of the benefit and advantage
> to me accruing by the construction [crossed out] of
> the Georgia Air Line Rail Road as well as the receipt of
> Two hundred dollars to me paid.  I have this day bargained
> and sold and do hereby transfer and Convey unto the Georgia Air
> Line Rail Road Company and its successors and assigns all
> the land contained within one hundred feet in width on each
> side of the Track [o]r Roadway (measuring from the center) of any
> portion of the lot of land hereinafter described through which
> said Rail Road may be constructed run and operated the
> land hereby conveyed being cut off and a portion of land lots
> number [blank] in the 17[unknown] of one originally Henry now
> Fulton County Ga and Jerome Bearse reserves the privilege of
> cultivating the Company right of way up to the tract on either
> side the same being the place whereon said Bearse now lives.
>         To have and to hold said tract or parcel of land unto
> said Georgia Air Line Rail Road Company for Rail Road purposes
> for ever in fee simple
>         Witness my hand and seal this 29th day of April AD 1869
> Signed sealed and delivered

Pls.' Mot. Summ. J., Ex. 8; *see also id.* at 5; Gov.'s Cross-Mot. Summ. J. at 7; *Ansley Walk Condo. Ass'n v. United States*, 142 Fed. Cl. 491, 500 (2019); *Price v. United States*, 156 Fed. Cl. 281, 285–86 (2021).[3]

## DISCUSSION

### A.    Legal Standard

#### 1.    Summary Judgment

Rule 56(a) of the Rules of the United States Court of Federal Claims ("RCFC") provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the . . . court of the basis for its motion" and must identify the portions of the record

---

[3] There are some minor inconsistencies in the way the parties, as well as the opinions in *Price* and *Ansley Walk*, each present the language of the Bearse deed.  These inconsistencies are minor and in formatting only (e.g., using "[blank]" versus "[ ]").  The version reflected in this opinion is the undersigned's best effort at presenting for the reader a uniform version of the deed's language.

that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former version of Fed. R. Civ. P. 56(c)).

The judge's function at the summary judgment stage "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), bearing in mind that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *id*. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 (1970)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" thus making summary judgment appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The foregoing also applies in cases, as here, in which the parties have cross-moved for summary judgment. *See Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968–69 (Fed. Cir. 2009). "[E]ach motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered." *Id*. (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). "To the extent there is a genuine issue of material fact, both motions must be denied." *Id*.

### 2. The Just Compensation Clause in Trails Act Cases

"It is settled law that a Fifth Amendment taking occurs in Rails–to–Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010) (citing *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009)); *see also Caldwell*, 391 F.3d at 1228 ("[A] Fifth Amendment taking occurs when, pursuant to the Trails Act, state law reversionary interests are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use.") (citations omitted). In other words, "[w]here the railroad that operated service over the rail corridor held a mere easement to the underlying property, . . . establishment of a recreational trail—and the preclusion of easement reversion—can form the basis for a valid physical takings claim." *Andrews v. United States*, 844 F. App'x 351, 352 (Fed. Cir. 2021) (citing *Preseault v. United States*, 100 F.3d 1525, 1550 (Fed. Cir. 1996) ("*Preseault II*")).

More succinctly, a "Fifth Amendment taking, if any, under the Trails Act is accomplished when an NITU is issued and state law reversionary interests that would otherwise take effect pursuant to normal abandonment proceedings are forestalled." *Caldwell*, 391 F.3d at 1236. "The issuance of the NITU is the only *government* action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right of way." *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006) (quoting *Caldwell*, 391 F.3d at 1233–34 (emphasis in original)). "Thus, a Trails Act taking begins and a takings claim accrues, if at all, on issuance of the NITU." *Id*.

Once a NITU has been issued and preclusion of state-law reversionary interests has occurred, the "determinative issues" in a rails-to-trails case are as follows:

(1) who owned the strips of land involved, specifically did the Railroad by the [relevant deed] acquire only easements, or did it obtain fee simple estates; (2) if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Presealt II*, 100 F.3d at 1533. To answer the first question—whether Plaintiffs have a compensable property interest—"'we must apply the law of the state where the property interest arises,' here, Georgia law . . . ." *Hardy v. United States*, 965 F.3d 1338, 1344 (Fed. Cir. 2020) (quoting *Chi. Coating Co. v. United States*, 892 F.3d 1164, 1170 (Fed. Cir. 2018)); *see also Presealt II*, 100 F.3d at 1534 ("The question of what estates in property were created by these turn-of-the-century transfers to the Railroad requires a close examination of the conveying instruments, read in light of the common law and statutes of Vermont then in effect.").

### 3.  Georgia Law on Conveyances of Land and Easements

In Georgia, "the crucial test in determining whether a conveyance grants an easement in, or conveys title to, land, is the intention of the parties, but in arriving at the intention many elements enter into the question." *Jackson v. Rogers*, 54 S.E.2d 132, 136 (Ga. 1949) ("*Rogers*"). Importantly, "[t]he whole deed or instrument must be looked to, and not merely disjointed parts of it." *Id*. Courts are to consider "[t]he recitals in the deed, the contract, the subject-matter, the object, purposes, and nature of the restrictions or limitations, if any, or the absence of such, and the attendant facts and circumstances of the parties at the time of the making of the conveyance . . . ." *Id*.; *see also Barber v. S. Ry. Co.*, 274 S.E.2d 336, 337 (Ga. 1981) ("[I]n determining whether an interest conveyed is an easement or fee simple title to land, each case depends on its own particular facts and circumstances.") ("*Barber*").

Many of the Georgia Supreme Court's decisions relevant here are brief, consisting of only a few pages in full. Yet, as addressed in further detail below, some general principles can be extracted from their holdings and applied to the Bearse deed.

### B.  Analysis

In the instant case, there is no dispute over material facts.[4] Rather, as the parties make clear, the outcome of this case turns squarely on the Court's legal interpretation of the Bearse deed under Georgia law. *See* Pls.' Mot. Summ. J. at 13 ("The first issue for this Court to resolve is whether the Railroad held an easement in its corridor or owned the fee estate in the land."); Gov.'s Cross-Mot. Summ. J. at 7–8 (noting the Court's "analysis begins with a determination of

---

[4] The Court notes that in their motion for summary judgment, Plaintiffs' "Statement of Uncontroverted Facts" asserts that "[t]he Railroad held only an easement for railroad purposes under Georgia law . . . ." Pls.' Mot. Summ. J. at 3. Whether the Bearse deed conveyed an easement or a fee simple estate under Georgia law is the centrally disputed issue in this matter. Plaintiffs themselves acknowledge that in their own brief. *Id*. at 13. Thus, the type of interest conveyed in the deed is not, as Plaintiffs blanketly assert, "uncontroverted"—far from it, in fact.

whether a plaintiff has an ownership interest in the segment of the subject railroad corridor adjacent to their property"). Thus, the task for this Court is to discern what a court of law in Georgia would determine if presented with the Bearse deed.

### 1. Statutory Presumption of Fee

The government asserts that the "starting point" for this case is a presumption of fee simple under Georgia law, such that Plaintiffs must overcome that presumption for the Court to find that an easement was conveyed. Gov.'s Cross-Mot. Summ. J. at 11. Plaintiffs counter that under Georgia law, "[t]here is no presumption that a deed to a railroad corporation conveyed the fee estate." ECF No. 31 at 2 ("Pls.' Resp. and Reply"). Moreover, Plaintiffs assert that "[i]n addressing whether a deed to a railroad corporation conveyed a fee estate or easement, the Georgia Supreme Court has never relied upon a presumption that the deed conveyed the fee estate." *Id.* at 3.

It is true that Georgia statutory law currently speaks to a presumption of fee. The relevant statutory provision provides that "[t]he word 'heirs' or its equivalent is not necessary to create an absolute estate. Every properly executed conveyance shall be construed to convey the fee *unless* a lesser estate is mentioned and limited in that conveyance." Ga. Code Ann. § 44-6-21 (2021) (emphasis added).[5] It is also true, however, that citation to, or reliance on, this statutory provision is noticeably absent from Georgia Supreme Court rulings that construe deed conveyances to railroads.

Faced with similar arguments, two other judges of this Court in reviewing the instant deed accepted that a presumption of fee simple exists in Georgia. *Ansley Walk*, 142 Fed. Cl. at 500 ("Georgia case law begins with the presumption of a transfer in fee."); *Price*, 156 Fed. Cl. at 290 ("The Bearse deed will be presumed to convey fee simple"). The undersigned, however, sees no need in the instant case to conclusively decide the presumption question. For, even if the Court accepts as true a statutory presumption of fee simple, that presumption is already built into the Bearse deed through its habendum clause, which conveys an interest to the Railroad "for Rail Road purposes *for ever in fee simple*." In other words, the government need not rely on a statutory presumption of fee simple in the instant case, because the Bearse deed expressly refers to itself as a conveyance in fee simple. Thus, the only important question becomes: are there other indicia within the Bearse deed that detract from its own reference to "fee simple," such that merely an easement was conveyed? Or was the use of the term "fee simple" in this deed intended to describe the duration of the conveyance rather than the type of conveyance?

### 2. Effect of *Ragan*, *Ansley Walk*, and *Price*

Before proceeding to scrutinize the Bearse deed, the Court acknowledges that others have tread here before. At least three previous judicial decisions have been issued determining the property interest conveyed to the Railroad by the Bearse deed. In 2017, the Superior Court of Fulton County, Georgia, issued a ruling in *Atlanta Development Authority v. Ragan, et. al*, Civil Action File No. 2016-CV-273389 (Super. Ct. Fulton Cty., Ga., Sept. 19, 2017), finding that the

---

[5] The government cites this provision in its cross motion as "Ga. Code Ann. § 85-503," which appears to be the location of the relevant provision in the 1933 Georgia Code.

Bearse deed conveyed the land to the Railroad in fee simple.[6]  Subsequently, two other judges of this Court determined that, under Georgia law, the Bearse deed conveyed merely an easement to the Railroad.  *Ansley Walk*, 142 Fed. Cl. at 500 ("After careful consideration, the Court finds that the Bearse deed conveyed an easement to Georgia Air."); *Price*, 156 Fed. Cl. at 301 ("[T]he Court finds the language in the Bearse deed demonstrates the grantor's intent to transfer an easement, not a fee simple estate, to the railroad company.") (citations omitted).

Not surprisingly, the parties dispute which case(s) should influence the Court in the instant matter.  In fact, early in this case, the government, in a motion to dismiss, attempted to use the *Ragan* decision to collaterally estop Plaintiffs from pursuing their claims in this Court altogether.  For reasons more fully explained in a separate opinion, the Court denied the government's motion, "because under Georgia law, which this Court is required to apply under 28 U.S.C. § 1738, the decision in *Ragan* has no preclusive effect on the instant litigation." *Albano v. United States*, 152 Fed. Cl. 343, 345 (2021).  And, as Plaintiffs here differ from those in *Ansley Walk* and *Price*, the decisions in those cases generally cannot be used offensively by Plaintiffs to collaterally estop the United States from arguing that the Bearse deed conveyed an interest in fee simple.  *See United States v. Mendoza*, 464 U.S. 154, 162 (1984) ("We hold, therefore, that nonmutual offensive collateral estoppel simply does not apply against the government . . . .").

In sum, *Ragan*, *Ansley Walk*, and *Price* are at best persuasive authority and have no binding effect on the Court's analysis here.  The Court notes, however, that of the three, *Ragan* is unquestionably the least persuasive.  First, the court there found a fee simple conveyance "[w]ithout accompanying analysis . . . ."  *Albano*, 152 Fed. Cl. at 346.  Second, as the Court previously observed, determining the type of interest conveyed may not have even been necessary to the decision in *Ragan*, as that case concerned ejectment and liability for trespass—rights that may be enforceable by a grantee holding either fee simple ownership *or* an easement. *Id*. at 349 n.3.[7]  And third, with all due respect to the tribunal, *Ragan* is a trial court ruling. When guided by state court jurisprudence, as this Court is in determining property interests in takings cases, the Court looks to the highest state court's interpretation of state law—in other words, the Supreme Court of Georgia, not the Superior Court of Fulton County, Georgia. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1359 (Fed. Cir. 2005) ("[T]he state court decision is not binding on a federal court unless rendered by the state's highest court.") (citation omitted); *Litton Indus. Prod., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 165 (Fed. Cir. 1985) (holding that the issue "must be decided by looking to the law of that state as declared by its legislature in a statute or by its highest court in a decision") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Because *Ragan* is neither preclusive nor persuasive in any material respect, the Court turns to its own construction of the Bearse deed through the lens of applicable Georgia law.

---

[6] The parties dispute whether this finding was essential to the decision in *Ragan*.
[7] The Superior Court of Fulton County acknowledged an alternative holding whereby the Bearse deed could have, in fact, conveyed merely an easement.  *See* ECF No. 30-6 at 4 (*Atlanta Dev. Auth. v. Ragan, et al.*, Civil Action File No. 2016-CV-273389 (Super. Ct. Fulton Cty., Ga., Sept. 19, 2017)).

### 3.  Construing the Bearse Deed Under Georgia Law

*a)*  *"In consideration of the benefit and advantage to me accruing by the construction of the Georgia Air Line Rail Road as well as the receipt of Two hundred dollars to me paid."*

The Court begins its analysis of the Bearse deed with a review of the consideration clause.  As the "intention of the parties" is central, *Rogers*, 54 S.E.2d at 136, the Georgia Supreme Court has at times found the amount of consideration paid by a grantee in exchange for a property interest to be indicative of—or at least useful in deducing—the intended conveyance. For example, in *Johnson v. Valdosta*, "[t]he consideration of the deed . . .  was the *substantial* sum of $400."  *Johnson v. Valdosta, M. & W.R. Co.*, 150 S.E. 845, 847 (Ga. 1929) (emphasis added) ("*Valdosta*").  The court reasoned that "[i]n this respect it differs from conveyances to railroad companies of right of way based upon *nominal* considerations and of benefits to be derived by the grantors from the construction and operations of railroads over or through their lands," ultimately holding the deed conveyed title to the land.  *Id*. (emphasis added); *see also id*. at 848 ("In the case under consideration, as we have seen, there was a large money consideration for the deed, and it was not based upon benefits and advantages to be derived by the grantor from the construction of the railroad.").

Conversely, in finding "a mere easement," the Georgia Supreme Court in *Duggan v. Dennard* stated that "[t]he first thing to be noted in the deed is that the [grantor] conveyed a considerable tract of land for the *mere nominal* consideration of $1 . . . ."  *Duggan v. Dennard*, 156 S.E. 315, 316 (Ga. 1930) (emphasis added) ("*Duggan*").  Such consideration "would be quite unusual when it is considered that it was to . . . permit a dangerous instrumentality to endanger, by the locomotion of its engines and cars, the lives of individuals and live stock . . . without any guarantee or consideration of the convenience of the grantor . . . ."  *Id*.  Years later, the court in *Jackson v. Sorrells* observed "the fact that the consideration was nominal"—ten dollars—in concluding that a deed "intended to convey and did convey only an easement to construct and operate a railroad over the land in question."  *Jackson v. Sorrells*, 92 S.E.2d 513, 514 (Ga. 1956).

Nevertheless, the Georgia Supreme Court has also found fee transfers with seemingly nominal consideration and easements with seemingly substantial consideration.  In *Rogers*, the court observed "[i]t is true that the money consideration of $10 therein expressed is *nominal only*, and that the further consideration recited is 'the benefit and advantages to me accruing by the construction of the Gainesville, Jefferson & Southern Railroad,'" yet it concluded that the deed "conveyed to the grantee therein a fee-simple title . . . and not a mere easement for railroad purposes."  *Rogers*, 54 S.E.2d at 137 (emphasis added).  Years earlier, the same court observed that "[t]he consideration recited [in the deed] is $750," but it nonetheless held "that the interest or estate conveyed by the deed was an easement for a street."  *City of Savannah v. Barnes*, 96 S.E. 625, 626 (Ga. 1918).

Turning to the instant case, the government—in arguing for fee simple—asserts that "Plaintiffs concede that [the $200] consideration in the Bearse deed is substantial . . . ."  Gov.'s

9

Cross-Mot. Summ. J. at 22.  The Court, however, does not read Plaintiffs' position as such.[8]  *See e.g.*, Pls.' Resp. and Reply at 13 ("[O]ne can quibble as to whether $200 is nominal or substantial consideration . . . .").  And in the two previous instances in which judges of this Court reviewed the Bearse deed, the judges characterized the $200 consideration as "non-nominal"—a semantic degree above nominal, but not quite substantial.  *See Ansley Walk*, 142 Fed. Cl. at 500; *Price*, 156 Fed. Cl. at 301.

The Court finds the debate in the instant case uninstructive and, moreover, finds consideration in Georgia jurisprudence the least compelling indicator of whether a deed coveys an interest in fee simple or a lesser estate, such as an easement.  *See also Price*, 156 Fed. Cl. at 291 ("In short, while consideration is not meaningless, it is merely one factor in a court's analysis—and an inconclusive factor at that.").  Absent a dependable way to compare the market value of land at the time of each conveyance—such that one deed could be weighed against another—it is difficult to draw reliable conclusions from Georgia's treatment of consideration alone.  For one plot of land, $200 might have been quite substantial; $200 for a different plot of land might have been nominal.[9]  In the instant case, the government proffered no evidence whatsoever to establish the value of the land at the time Bearse conveyed a property interest therein, and thus the Court cannot conclude that the $200 paid to Bearse was nominal, substantial, or perhaps something in-between.  *Cf. Rogers v. Pitchford*, 184 S.E. 623, 624 (Ga. 1936) ("It will be noted that in that case the consideration was $400, a substantial sum for the amount of land conveyed . . . .") ("*Pitchford*").  In fact, the only indication the Court has about the value of the property at issue suggests that the Bearse deed conveyed an interest in at least .68-miles of land for $200, and that a mere "[t]wo hundred feet of right of way" on nearby land was conveyed at approximately the same time for $385.[10]  *See Ansley Walk*, 142 Fed. Cl. at 502. The Court can draw no conclusions as to the value of the consideration provided from this smattering of information.

---

[8] The government repeatedly makes an argument about Plaintiffs "conceding," which appears to misstate Plaintiffs' position.  For example, the government asserts "*Plaintiffs concede* that the consideration conveyed with the Bearse deed is 'substantial.'"  Gov.'s Cross-Mot. Summ. J. at 11 (citing "Pl.'s Br. at 23–24") (emphasis added). When the Court reviewed the record for this alleged concession, it found nothing on pages 23–24 of Plaintiffs' motion for summary judgment (whether using Plaintiffs' own pagination or the default pagination from the Court's docketing system) that could be construed as a concession on this point.  In fact, the word "substantial" appears three times in Plaintiffs' motion for summary judgment at pages 19–20 and is only in quotes from other cases— never used in a fashion by Plaintiffs to "concede" the relative amount of consideration.  It appears to the Court that counsel for the government, in perhaps recycling its brief from *Ansley Walk*, failed to remove holdover references to the *Ansley Walk* plaintiffs' briefs.  *See also* Gov.'s Cross-Mot. Summ. J. at i (table of contents referencing "Liddell deed," even though only the Bearse deed is at issue here).  As a result, the government's motion ascribes an apparent concession by the plaintiffs in a separate case to Plaintiffs in the instant case.

[9] According to *Ansley Walk*, the Liddell deed "contained substantial consideration of $385 dollars, more than the Bearse deed," yet still "conveyed an easement to [the railroad]" instead of fee simple.  *Ansley Walk*, 142 Fed. Cl. at 502.

[10] The briefing in *Ansley Walk* included some notable exhibits on this point.  There, the plaintiffs' "Exhibit G," referenced as "Valuation Schedules of Valuation Section 12a of the Southern Railway Company," appears to show that Bearse conveyed "23.95" acres to the "Ga.A.L. RR" on "4-29-69" for "$ 200.00," while "James M. Liddell" conveyed a nearby "5.51" acres to the same railroad on "9-17-69" for "$ 385.00."  *See* Docket No. 1:17-cv-01600, ECF No. 23-8 at NARA_00000004-5.

Moreover, consideration is merely one aspect of the analysis.[11]  *See Sorrells*, 92 S.E.2d at 514 ("As indicating [the grantor's] intention, the fact that the consideration was nominal, that the grantor retained the right to cultivate the land . . . that the land is conveyed for use as a railroad, . . . *and other facts and circumstances* surrounding the transaction should be considered.") (emphasis added).  Accordingly, the Court proceeds to examine the other clauses at issue, consistent with its instruction to examine "[t]he whole deed or instrument . . . and not merely disjointed parts of it."  *Rogers*, 54 S.E.2d at 136.

> **b)  "I have this day bargained and sold and do hereby transfer and Convey unto the Georgia Air Line Rail Road Company and its successors and assigns . . ."**

Next, the granting clause in the Bearse deed could, on its face, suggests a fee simple conveyance, as the Georgia Supreme Court has found fee conveyances in cases in which the granting clause included the terms "successors and assigns" and easements in cases in which such terms were absent.  *See Valdosta*, 150 S.E. at 847 (finding fee simple where "the grantor in this case conveyed to the railroad company, its successors and assigns, 'all that tract or parcel of land . . . .'"); *Rogers*, 54 S.E.2d at 136 (writing, in finding a fee simple conveyance, that "[i]t will thus be seen that the conveyance is made not only to the railroad company but also to its successors and assigns."); *Pitchford*, 184 S.E. at 624 (finding easement where, among other factors, "[t]he conveyance is *not* to 'successors and assigns' of the railroad company") (on motion for rehearing) (emphasis added).

The government runs with this line of argument, asserting that the Bearse deed's "conveyance to 'successors and assigns' demonstrates an intent to convey in fee simple."  Gov.'s Cross-Mot. Summ. J. at 14.  Plaintiffs in response argue that "[t]here is no Georgia case where that language alone has been decisive of the outcome . . . ."  Pls.' Resp. and Reply at 11.  The Court concurs with Plaintiffs.  Although the government is correct that a conveyance to "successors and assigns" does indeed appear to be *one factor* in finding fee simple under Georgia law, the phrase is not in and of itself determinative.  *See Sorrells*, 92 S.E.2d at 513 (finding easement, even though deed conveyed interest to railroad "and its successors and assigns"); *Duggan*, 156 S.E. at 316 (holding a deed conveying interest to "[grantee's] successors or assigns" was "not intended by either party to that instrument to convey, and did not in fact transmit, to the [railroad] anything more than a mere easement, a right of way for the [railroad] and its successors and assigns").  As the Georgia case law is either mixed on the import of the use of the phrase "successors or assigns" or does not put much weight on the use of the phrase, the Court must consider whether the rest of the deed supports or conflicts with a finding of fee simple.

---

[11] While finding the consideration clause—and consideration jurisprudence in general—largely uninstructive, the Court nevertheless notes that, if anything, the Bearse deed's consideration clause tends to point toward a conveyance of easement as opposed to fee simple.  In *Valdosta*, the Georgia Supreme Court suggested that additional verbiage about the benefits accruing to the grantor of railroad construction (as is present in the Bearse deed), in conjunction with a nominal fee, indicates easement.  *Valdosta*, 150 S.E. at 847 ("In this respect [the deed] differs from conveyances to railroad companies of right of way based upon nominal considerations *and of benefits to be derived by the grantors from the construction and operations of railroads over or through their lands*.") (emphasis added).

> c) "**[A]ll the land contained within one hundred feet in width on each side of the Track [o]r Roadway (measuring from the center) of any portion of the lot of land hereinafter described through which said Rail Road may be constructed run and operated the land hereby conveyed being cut off and a portion of land lots number [blank] in the 17[unknown] of one originally Henry now Fulton County Ga . . ."**

The deed next describes the portion of the Bearse property that is the subject of the conveyance. It does not, however, describe the property with any specificity. At best, the Court reads a general conveyance "of any portion of the lot of land . . . through which said Rail Road may be constructed[,] run[,] and operated," followed by verbiage lacking any specificity, such as lot numbers or metes and bounds. The description clause mentions no acreage, no specific boundaries, metes and bounds, or anything else from which to ascertain the exact location on the Bearse property where the interest conveyed by the deed is located.

The Georgia Supreme Court's treatment of the vagueness (or, specificity) of property conveyances is somewhat unclear. In *Valdosta*, for example, the deed conveyed to the railroad "[a] strip of land sixty feet wide for a railroad right of way over, upon, and across about twenty-five acres, more or less, of lot of land (No. 308) three hundred and eight, in the 8th land district of said State and County . . . ." *Valdosta*, 150 S.E. at 845. Compared to the Bearse deed's description clause, the *Valdosta* deed is more specific. Even still, however, the plaintiffs there "insisted . . . that the deed . . . is void for lack of sufficient description of the property conveyed." *Id*. at 848. But the court found that argument to be without merit, reasoning that "[w]here property is conveyed by a grantor to a railway company for the purpose of its right of way, without any designation of the route in the deed, the occupancy of a particular route by the grantee with the consent of the grantor will identify and locate the property conveyed . . . ." *Id*. (citations omitted). In other words, according to the court in *Valdosta*, a vague description clause does not preclude a finding of fee simple.

More recently, however, the Court of Appeals of Georgia reasoned that a grantor may have intended to convey an easement "because the initial conveyance specified only a quantity of land affected, 100 feet on either side of the tracks, and the direction; it left the location of the right-of-way to be later determined by the railroad . . . ." *Latham Homes Sanitation, Inc. v. CSX Transp., Inc.*, 538 S.E.2d 107, 109 (Ga. Ct. App. 2000) (citation omitted). "This discretion to pick the land conveyed after the execution of the deed would be inconsistent with conveyance of title, but would not be inconsistent with an easement that is only an encumbrance on the land." *Id*; *see also Ansley Walk*, 142 Fed. Cl. at 501 ("The Court fails to see how a conveyance of fee, which necessarily relates to unique, specific real property, could be executed in such vague, conditional, and undefined terms. The two concepts seem oppositional.").

The parties here contest the relevance of *Valdosta* to the description clause in the Bearse deed. *See* Gov.'s Cross-Mot. Summ. J. at 14–15; Pls.' Resp. and Reply at 12. The Court, however, finds no hard and fast principle to be drawn on this issue. The best the Court can deduce is that a vague description clause—as found in the Bearse deed—may *suggest* that a grantor intended an easement, yet vagueness also does not *preclude* a finding of fee simple when other factors lead a court that direction.

12

> **d)** *"[A]nd Jerome Bearse reserves the privilege of cultivating the Company right of way up to the tract on either side the same being the place whereon said Bearse now lives."*

### i.   Effect of Reservation Clause

Next, the Court considers the reservation clause contained in the Bearse deed, by which the grantor "reserve[d] the privilege of cultivating the Company right of way . . . ."  Pls.' Mot. Summ. J., Ex. 8.  While the whole deed must indeed be construed, under Georgia law, the importance of this particular clause in the Bearse deed cannot be overstated.  In cases in which a deed expressly reserves to the grantor an interest in the land in question, such as a right to cultivate, the Georgia Supreme Court has consistently held that the grantor conveyed an easement, not a fee simple estate.[12]  *Sorrells*, 92 S.E.2d at 513 (holding that a deed "[r]eserving the right to cultivate up to road bed" conveyed an easement); *Askew v. Spence*, 79 S.E.2d 531, 532 (Ga. 1954) (finding an easement in a case in which "the grantor retains the right to cultivate so much of said land as does not interfere with its use for railroad purposes"); *Pitchford*, 184 S.E. at 623 (concluding that a deed "[r]eserving the right to cultivate any of the above-described land until needed for railroad purposes, depot, warehouses, or building purposes" conveyed an easement); *Gaston v. Gainesville & D. Elec. Ry. Co.*, 48 S.E. 188, 189 (Ga. 1904) (finding that a deed "reserving timber and minerals" to the grantor conveyed an easement).

Often the presence (or lack) of a reservation clause appears, in fact, as *the* determining factor for the Georgia Supreme Court in deciphering the intent of a grantor.[13]  On this point, *Sorrells* and *Rogers* are particularly instructive: the deed in the former was held to convey an easement while in the latter fee simple.  The plaintiffs in *Sorrells*, contending that the deed in question conveyed fee, cited *Rogers* as controlling.  *Sorrells*, 92 S.E.2d at 514.  So too does the government in the instant case.  Gov.'s Cross-Mot. Summ. J. at 16 ("[U]nder *Rogers*, this Court should also hold that the Bearse deed conveyed fee.").  In *Rogers*, **just as in the Bearse deed**, the grantor

> **bargained and sold, and do hereby transfer and convey** unto the [railroad], and **its successors and assigns**, **all the land** contained within one hundred feet in width on each side of its track, or roadbed (measuring from the center), of any

---

[12] The Court has more than enough precedent from the Georgia Supreme Court to be convinced of the importance of a reservation clause appearing in deeds that convey an interest in land.  For good measure, however, the Court notes that the Court of Appeals of Georgia has similarly found such clauses instructive.  *See Safeco Title Ins. Co. v. Citizens & S. Nat. Bank*, 380 S.E.2d 477, 479 (Ga. Ct. App. 1989) (in reversing a trial court's finding of easement, the Court of Appeals notes that the deed in question "contains no reservation to the grantor of any right in the disputed property nor places any burden on the grantee similar to the reserved right to cultivate and the duty to maintain stock gaps in *Sorrells*"); *Latham Homes Sanitation, Inc. v. CSX Transp., Inc.*, 538 S.E.2d 107, 109 (Ga. Ct. App. 2000) ("It appears that the conveyance . . . did not intend to convey anything more to the railroad than an easement for the right-of-way, because the initial conveyance specified only a quantity of land affected . . . and retained the use of the land for agricultural purposes up to ten feet from the tracks.").

[13] Although not binding on the question here, another judge of this Court has found reservation clauses to be effectively determinative in and of themselves.  In *Hardy v. United States*, the judge wrote that "the presence of a reservation in a deed, such as a conveyor's right to cultivate the land up to the right-of-way, offers *proof of intent* to convey an easement."  *Hardy v. United States*, 127 Fed. Cl. 1, 9 (2016) (emphasis added).

portion of the lot of land hereinafter described through which said railroad may be constructed. The land hereby conveyed being that tract or parcel of land in said county and State, land on which I live, and any other land through which it may run belonging to me, bounded by lands of Z. B. Betts, W. E. Hill, W. J. Wright, John B. Betts, and others. **To have and to hold said tract or parcel of land** to the said railroad company, **for railroad purposes**, **forever in fee simple**.

*Rogers*, 54 S.E.2d at 133 (emphasis added). And yet, despite nearly identical deed language in *Sorrells*,[14] including the same ten-dollar consideration, the court held that merely an easement was conveyed. The court made clear in distinguishing between the two deeds that the deed in *Rogers* "*contained no reservation to the grantor* of any right in the land in question." *Sorrells*, 92 S.E.2d at 514 (emphasis added). In the same way, the Bearse deed's reserving of "the privilege of cultivating the Company right of way" convinces the Court that *Sorrells*—not *Rogers*—controls the outcome here.

More recently, the Georgia Supreme Court in *Barber* unequivocally confirmed the weight of a reservation clause. *See generally Barber*, 274 S.E.2d 336. The *Barber* court did not incorporate into its opinion the language of the four deeds at issue; however, the Plaintiffs in *Ansley Walk* "retrieved the case file from Cobb County Superior Court, which contained copies of the four deeds. Plaintiffs then obtained copies of the four recorded deeds from Cobb County Real Estate department." Docket No. 1:17-cv-01600-LAS, ECF No. 24 at 20 ("*Ansley* MSJ Memorandum"); *see also* Docket No. 1:17-cv-01600, ECF No. 23-11, 23-12, 23-13, 23-14.[15] Most relevant here are the James Peek and T.J. Lowe deeds at issue in *Barber*. The James Peek deed, set forth in the *Ansley* plaintiffs' briefing, reads:

In consideration of the benefit and advantage to me accruing by the construction of the Georgia Western Railway as well as the receipt of Five Dollars to me paid, I have this day bargained and sold and do hereby transfer and convey unto said Georgia Western Railway Company, **its successors and assigns**, all the land contained within [100'] in width on each side of the track or roadway (measuring

---

[14] The deed at issue provided, in relevant part:

In consideration of the benefit and advantages accruing to me by the construction of the Gainesville, Jefferson, and Southern Railroad, as well as the receipt of Ten Dollars to me paid, I have this day **bargained and sold, and do hereby transfer and convey** unto the Gainesville, Jefferson, and Southern Railroad Company and **its successors and assigns**, **all the land** contained within one hundred feet in width on each side of its track, or road-bed (measuring from the center) of any portion of the lot of land hereinafter described through which said Railroad may be constructed. The land hereby conveyed being the tract whereon I live near Monroe, containing one hundred and thirty-seven acres, more or less. **Reserving the right to cultivate** up to road bed, the Road agreeing to keep up all stock gaps.

**To have and to hold said tract or parcel of land** to the said Railroad Company, **for Railroad purposes**, **forever in fee simple**.

*Sorrells*, 92 S.E.2d at 513 (emphasis added).

[15] At oral argument, the undersigned specifically asked the government whether it "take[s] any issue with the wording of [the *Barber* deeds] as [they were] presented in the *Ansley Walk* briefing." ECF No. 35 at 48. The government answered: "Do I think the language of the deeds as presented to the [C]ourt was incorrect? . . . No." *Id.*

from the centre) of any portion of the lot of land hereinafter described through which said railroad may be constructed, run and operated.  The land hereby conveyed being cutoff and a portion of [description of land].  This deed shall be so construed as to give said Company all the land that is necessary to construct said railroad upon, but the **farming privileges in that portion not absolutely occupied by said railroad is hereby reserved**.  All right that is necessary to be exercised in protecting said road from timbers is granted to said company.  To have and to hold said tract or parcel of land unto said Georgia Western Railroad Company **for Railroad purposes forever in fee simple**.  This deed shall be void if said Railway is not constructed through said lot of land.

*Ansley* MSJ Memorandum at 21 (emphasis added).  And the T. J. Lowe deed reads:

In consideration of the benefit and advantages to us accruing from the construction of the Georgia Pacific Railroad and further in consideration of the sum of One Dollar in hand paid, the receipt whereof is hereby acknowledged, we do hereby grant bargain sell transfer and convey unto the Georgia Pacific Railroad Company **its successors or assigns** a strip of land 200 feet in width namely 100 feet on the right and 100 feet on the left of the centre line of its track or roadway, as now or hereafter to be located with such additional width at cuttings and embankments as may be required in and through any portion of the following lot or parcel of land through which the said railroad may pass namely [description of land], **reserving the right to cultivate up to track unless wanted for Railroad purposes**.  The said track or roadway entering said premises at or near [description of location], the total length of said Strip of land being about ____ feet, and the entire quantity being estimated at ____ acres, be the same more or less.  To have and to hold said strip of land **in fee simple for Railroad purposes only. And we do warrant the title to such land against the lawful claims of all persons**.

*Id*. (emphasis added).  The trial court held that both the James Peek and T. J. Lowe deeds conveyed easements, while the other two—the Elizabeth Lowe and J. S. Lowe deeds—conveyed land in fee simple.  In its findings of fact, the lower court observed that the Elizabeth Lowe deed "conveyed certain land to the [railroad] 'for railroad purposes forever in fee simple' and *does not* contain language reserving any interest in that land in the grantor," and the J. S. Lowe deed "conveyed certain land to the [railroad] 'in fee simple for railroad purposes' and *does not* contain language reserving any interest in that land in the grantors."  *See* Order on Motion for Partial Summary Judgment, *Southern Railway Co. v. Barber, et al.*, Cobb County Superior Court, Civil Action File Number 78-4477 (September 3, 1980) (available at ECF No. 23-18 in Docket No. 1:17-cv-01600) (emphasis added).

On appeal, the *Barber* court "agree[d] with the trial judge that under *Jackson v. Rogers*, . . . the Elizabeth Lowe and J. S. Lowe deeds must be viewed as conveying fee-simple title."  274 S.E.2d at 337.  Yet, "[u]nder *Jackson v. Sorrells*, . . . the James Peek and T. J. Lowe deeds must be viewed as conveying mere easements," as they "are not distinguishable in any material respect from the deed in [*Sorrells*]."  *Id*.  In short, the Court reads *Barber* as turning almost

entirely on the presence (or lack) of a reservation clause, as even the warranty of title clause—which can suggest a fee conveyance—in the T. J. Lowe deed seemingly did not outweigh the reservation clause.  *See generally id*.

To put a finer point on it, the government in the instant case did not—neither through its briefs nor when given the opportunity at oral argument—point the Court to a *single case* in which the Georgia Supreme Court has held a railroad right of way deed containing a reservation clause to convey a fee interest instead of an easement.  So far as the Court is aware, such a case does not exist.

It is difficult to read Georgia jurisprudence any other way.  Yet, the government does. First, in confronting the Bearse deed's reservation clause, the government attempts to manufacture a new requirement—a sort of "reservation plus"—such that a grantor's reservation of rights must be paired with an affirmative duty or burden imposed on the grantee before a court should find that an easement was intended.  *See* Gov.'s Cross-Mot. Summ. J. at 19 ("[T]he deed in *Sorrells* placed a condition on the railroad to maintain stock gaps, where no such burdens exist in the Bearse deed."); *id*. at 21–22 ("[W]here the conveyance instrument does not burden the grantee and no grantee rights are specifically called out, the logic of *Askew* applies [sic] supports the interpretation of the Bearse deed as conveying fee.").

Although it is true that in *Sorrells* the deed contained a reservation clause as well as a clause imposing duties on the grantee (the railroad "agree[d] to keep up all stock gaps"), it was not the duty imposed on the grantee that swayed the court in *Sorrells*.  *Sorrells*, 92 S.E.2d at 513. In fact, *Sorrells* demonstrates quite the opposite:

> In the instant case, the grantor reserved the right to cultivate the land up to the road bed and required the railroad to keep up all stock gaps.  In this respect, the deed in the instant case is similar to the deeds considered in the cases of *Gaston v. Gainesville & D. Electric Ry. Co.*, 120 Ga. 516, 48 S.E. 188; *Georgia & F. Railway v. Swain*, 145 Ga. 817, 90 S.E. 44; *Rogers v. Pitchford*, 181 Ga. 845, 184 S.E. 623, and *Askew v. Spence*, 210 Ga. 279, 79 S.E.2d 531.  In each of those cases it was held that the deed conveyed an easement over the lands of the grantor.

*Sorrells*, 92 S.E.2d at 514.  The deeds in at least two of the cases cited by the court in *Sorrells*—*Gaston* and *Pitchford*—contained *no* corresponding duty on the grantee (nor specifically spelled out the grantee's rights).  *See Gaston*, 48 S.E. at 188–89; *Pitchford*, 184 S.E. at 623.  They merely reserved rights or interests to the grantor, full stop.  Indeed, so far as the Court can identify, the Georgia Supreme Court has never required that a reservation of rights be paired with some concomitant duty on the grantee in order to find an easement.  Thus, the government's suggestion that to find an easement instead of a conveyance in fee a reservation clause must travel alongside a duty or burden on the grantee is plainly inconsistent with Georgia law.[16]

---

[16] To require such a concomitant duty would be an absurdity because in many cases the need for such a duty would not exist.  For instance, the deed in *Sorrells* had a stock gap maintenance requirement.  But what if there was no need to maintain stock gaps on the right of way covered by the Bearse deed—should the Court draw some legal significance to the lack of the inclusion of an unnecessary provision?  Of course not.  The Court does not know

Second, the government attempts to argue that there is a legally significant difference between the word "privilege"—as appears in the Bearse deed—and the word "right," such that a reserved *privilege* is less indicative of an easement.  Gov.'s Cross-Mot. Summ. J. at 18 (arguing the "mere reservation of a privilege does not require a determination of easement" and "the Bearse deed . . . used language providing the grantor a mere *privilege* to cultivate . . . as opposed to the *right to cultivate*"); *id.* at 19–20 ("[T]he Bearse deed reserves a *privilege*, not a *right* to cultivate land.").  In fairness to the government, the two words may very well have a legally significant difference somewhere, but not under Georgia conveyance law.  A brief review of the case law demonstrates merely a distinction without a difference.  In *Barber*, as detailed above, the James Peek deed reserved to the grantor farming *privileges*, not rights, and was nevertheless still held to convey an easement.[17]  Moreover, in *Gaston*, the deed "reserve[ed] timber and minerals" to the grantor—neither mentioning a right nor a privilege—and the court was nevertheless convinced of the conveyance of an easement.  *Gaston*, 48 S.E. at 189.

The government further suggests that "the use of more permissive language, like privilege, is more indicative of the intent of the grantee to allow for the permissive use of the property being conveyed to it in fee."  Gov.'s Cross-Mot. Summ. J. at 20 n.11.  Yet, the government is unable to cite a single Georgia Supreme Court case in support of its argument.  Rather, it cites for support *Fox v. Norfolk S. Corp.*, a Georgia Court of Appeals case concerning inverse condemnation and trespass wherein the relevant deed *neither* uses the word "right" nor the word "privilege" in anything that could even arguably be construed as a reservation clause.  *See Fox v. Norfolk S. Corp.*, 802 S.E.2d 319 (Ga. Ct. App. 2017).  In other words, in attempting to draw a legally significant difference between the words "privilege" and "right," the government here relies on a Georgia appellate case in which the words "privilege" and "right" are not even at issue.  The government's semantic distinction is clever but, to date, has effectively no compelling support in Georgia jurisprudence.[18]

---

whether the property conveyed by Bearse needed stop gaps or maintenance of anything else that would have necessitated the parties bargaining for a corresponding duty on the grantee.

[17] Note, also, that the *Barber* trial court's finding of facts speak of the Elizabeth Lowe and J. S. Lowe deeds as "not contain[ing] language reserving any *interest* in that land in the grantors."  *See* Order on Motion for Partial Summary Judgment, *Southern Railway Co. v. Barber, et al.*, Cobb County Superior Court, Civil Action File Number 78-4477 (September 3, 1980) (available at ECF No. 23-18 in Docket No. 1:17-cv-01600) (emphasis added).

[18] Though not cited by either party on this particular argument, the Georgia Supreme Court's discussion in *Georgia Power Co. v. Leonard* casts additional doubt on the government's attempted distinction.  There, the court considered an "easement agreement . . . under which the privilege of erecting and maintaining a power line over this property is granted, and the grantor expressly reserves the *right* of cultivation and ingress and egress."  *Georgia Power Co. v. Leonard*, 1 S.E.2d 579, 580 (Ga. 1939) (emphasis added).  The court then described the clause as reserving to the grantor "those *privileges* most essential to a full enjoyment of land of this character.  It was inserted to insure [sic] those *privileges*, not to exclude others consistent with the easement granted."  *Id.* at 581 (emphasis added).  Completing the full semantic circle, the court then observed that "[t]he full *right* to enjoy the land in any way not inconsistent with the defendant's easement remained with the plaintiff's landlord, the owner of the fee, simply because it was not granted."  *Id.* (emphasis added).  The Court suggests that if the terms "privilege" and "right" truly mean different things under Georgia conveyance law, the Georgia Supreme Court may have been less inclined to so casually jump between the two in *Georgia Power Co*.

In sum, and consistent with decisions of the Georgia Supreme Court, the Bearse deed's inclusion of a reservation clause firmly suggests the grantor's intent to convey an easement and nothing more.[19]

### ii.    Effect of "Right of Way" Language

Notably, the reservation clause also refers to the conveyance as a "Company **right of way**." Read out of context in any deed, one might interpret the term as dispositive in finding an easement. After all, a right of way could suggest something that is only temporary in nature—a grant of permission to one party to traverse land that is owned by another. However, the Georgia Supreme Court does not draw such a bright line.

In *Valdosta*, the court acknowledged that "[t]he words 'for a railroad right of way' have a twofold meaning." *Valdosta*, 150 S.E. at 847. "They are sometimes used to mean the incorporeal right of constructing and operating a railway over the land of another, and sometimes they are used to describe a tract of land which the railroad company appropriates to its use and upon which it builds the roadbed or track." *Id*. (citing *New Mexico v. U. S. Trust Co.*, 172 U. S. 171, 182 (1898)) (other citations omitted). In other words, the conveyance of a right of way *may* indeed be a conveyance of land in fee simple.

Of course, the parties interpret the term differently in the Bearse deed. The government reads "right of way" as merely "descriptive of the land granted because 'right of way' is not used in the granting clause, and is not accompanied by a reversionary clause." Gov.'s Cross-Mot. Summ. J. at 13. Plaintiffs, on the other hand, argue that the Georgia Supreme Court "frequently holds the term 'right-of-way' [to] mean[] the grantor conveyed an easement[,] not title to the fee estate." Pls.' Resp. and Reply at 5. The Court acknowledges that the term "right of way" in the Bearse deed is not dispositive in and of itself. Nevertheless, the Court finds Plaintiffs' position the more persuasive reading of Georgia law.

First, of the parties' cited cases in which the term "right of way" appears *somewhere* in the deed, a clear majority hold that an easement was conveyed. *See, e.g., Askew*, 79 S.E.2d at 532 (finding an easement in a case in which "property is conveyed . . . for railroad purposes, either as right of way or depot grounds"); *Jackson v. Crutchfield*, 191 S.E. 468, 470 (Ga. 1937) (finding an easement in a case in which the deed conveyed to the railroad and its "successors and assigns, the right of way over which to pass at all times"); *Pitchford*, 184 S.E. at 623 (finding an easement in a case in which property conveyed "for a railroad right of way"); *Atlanta, B. & A. Ry. Co. v. Coffee Cty.*, 110 S.E. 214, 215 (Ga. 1921) (finding an easement in a case in which the deed conveyed "[o]ne hundred feet in width of right of way"); *Georgia & F. Ry. v. Swain*, 90 S.E. 44 (Ga. 1916) (finding an easement in case in which the grantor "reserve[ed] unto itself, its successors or assigns, in fee simple, a right of way . . . , for tramroad and railroad purposes")

---

[19] The Court also wonders: if the Bearse deed is read as conveying a fee simple interest instead of an easement, what is a court to do with the grantor's reserved cultivation rights? Would not the current landowners have, at the very least, a potential Just Compensation claim against the government for its violation of their cultivation rights? The Court notes this conundrum only to reiterate the point that a reservation by a grantor is inconsistent with a conveyance in fee simple, as is clearly demonstrated by Georgia jurisprudence. A grantor cannot be said to have conveyed the entire "bundle of sticks" when it simultaneously reserves to itself one or more of those sticks.

("*Swain*"); *Louisville & N.R. Co. v. Maxey*, 77 S.E. 801, 801 (Ga. 1913) (finding an easement in a case in which the grantor conveyed to the railroad and "their successors and assigns, the right of way over which to pass at all times"); *but see Valdosta*, 150 S.E. at 846–47 (finding a fee simple estate in a case in which the deed conveyed "a strip of land sixty feet wide for a railroad right of way").

Moreover, the *Rogers* court, in finding the conveyance was in fee simple, noted that "[n]owhere in this instrument is the term 'easement' or 'right of way,' or any other expression used *from which an intent to convey merely an easement might be inferred . . . .*" *Rogers*, 54 S.E.2d at 136 (emphasis added). That said, the term is not a prerequisite to find that an easement was conveyed. In *Sorrells*, the deed does not mention a "right of way," and yet the Georgia Supreme Court was satisfied of the grantor's intent to convey an easement. *See Sorrells*, 92 S.E.2d at 513.

In short, the term "right of way" in the instant deed, particularly when read in the context of the *whole* deed, lends further support to the conclusion that Bearse conveyed an easement to the Railroad—not a fee simple estate.

### e) "To have and to hold said tract or parcel of land unto said Georgia Air Line Rail Road Company for Rail Road purposes for ever in fee simple"

The final operative clause of the Bearse deed, the habendum clause, provides what might appear to the casual reader as two phrases in conflict with each other: "for Rail Road purposes" and "for ever in fee simple." The phrase "for Rail Road purposes" seems to suggest a land-use or tenure limitation on the grantee, and thus argues in favor of an easement. On the other hand, the phrase "for ever in fee simple" seems to articulate the full and forever surrender of the grantor's rights to the land in question and thus a fee simple conveyance.

The government takes the clause altogether, arguing it is "nearly identical" to the habendum clause in *Rogers*, in which the Georgia Supreme Court found a fee simple conveyance instead of an easement. Gov.'s Cross-Mot. Summ. J. at 16. The government, on that point, is correct. However, the Bearse habendum clause is also 'nearly identical' to the habendum clause in *Sorrells*, in which the Georgia Supreme Court found the grantor intended to convey merely an easement. *See Sorrells*, 92 S.E.2d at 513 (the habendum clause provided "[t]o have and to hold said tract or parcel of land to the said Railroad Company, for Railroad purposes, forever in fee simple"). Thus, the Bearse habendum clause's similarity to that of the deed at issue in *Rogers* is of effectively no consequence.

First, the Bearse deed's inclusion of "for Rail Road purposes" in the habendum clause is not dispositive in finding an easement. However, these words—and similar variations—can be persuasive. *See Askew*, 79 S.E.2d at 532 (finding an easement and noting "that the property is conveyed to be used by the grantee for railroad purposes, either as right of way or depot grounds"). In *Duggan*, the Georgia Supreme Court, in holding only an easement was conveyed, found compelling the grantor's "selection of the words 'to be used' in the qualification to the habendum," such that "it seems clear that a reversion of the possession to the grantor or his heirs

or successors in title was in the contemplation of the parties." *Duggan*, 156 S.E. at 317.  The court continued:

> The use of the language last quoted, to our minds, clearly denotes that it was not the intention of the grantor that his lot of land should be aliened in fee, but that *it should be used only for the purpose of the construction and equipment of the named railroad*. The words "for all other purposes," construed with its associate language, does not extend further than to include all other purposes "proper in the construction and equipment" of the named railroad.

*Id*. (emphasis added).  That said, in *Rogers*, the Georgia Supreme Court opined:

> Much stress is also laid by counsel for the plaintiffs upon the expression, 'for railroad purposes,' contained in the habendum clause of the instrument here under consideration. . . .  [The plaintiffs] do insist that much weight should be given to this expression in determining whether the instrument here involved conveyed title or a mere easement.  While this is one of the circumstances to be taken into consideration in construing the instrument, *it is not of such significance as to require* a holding that an easement only was conveyed.

54 S.E.2d at 137 (emphasis added).

Moreover, the words "fee simple" are—perhaps counterintuitively—not dispositive in finding fee simple, but merely persuasive.  As the Georgia Supreme Court observed in *Valdosta*, "[i]t is true that the warranty clause in this deed, and the words in the tenendum clause 'forever in fee simple,' *do not* demand the construction that this deed conveys the title to this land, and not a mere easement therein, to the grantee." 150 S.E. at 847 (emphasis added).  The Georgia Supreme Court has even found instances in which "[t]he words 'fee simple' are descriptive of the extent of duration" of an easement.  *Swain*, 90 S.E. 44.  But the Georgia Supreme Court has also noted the absence of such words in support of a finding of an easement.  *Pitchford*, 184 S.E. at 624 (standing by its finding of easement on motion for rehearing because, among other reasons, "[t]here is no warranty or mention of fee-simple title").

Thus, the Court is left with two merely persuasive (yet seemingly conflicting) phrases in the habendum clause.  As indicated above, however, *Sorrells* resolves this potential roadblock for the Court, demonstrating why *something other than the habendum clause* is determinative of the property interest conveyed in the Bearse deed.  *See supra* Discussion B.3.d.i.

Finally, the lack of a warranty clause in the Bearse deed cannot be ignored.  While not a prerequisite to find a fee simple conveyance, the Georgia Supreme Court observed that the presence of a "warranty clause *and* the phrase 'forever in fee simple' are potent, *when considered in connection with the other terms* of this deed" in inducing the court to find fee instead of an easement.  *Valdosta*, 150 S.E. at 847 (emphasis added).  In *Askew*, the court, in holding "only an easement," found instructive the fact "that the property is conveyed to be used by the grantee for railroad purposes . . . ; *and* that there is *no* warranty of title . . . ." *Askew*, 79

S.E.2d at 532 (emphasis added).  Similarly, here the deed conveys the property "for Rail Road purposes" *and* contains no warranty clause.

### 4.   The Bearse Deed Conveys an Easement for Railroad Purposes

To summarize, the Bearse deed refers to itself as a conveyance in fee simple.  Thus, the only important question is whether there are *other* indicia within the Bearse deed that, on balance, *overcome* its reference to—and Georgia law's arguable presumption of—fee simple. Based on the foregoing, the Court answers that question in the affirmative.  While certain clauses taken by themselves may lend support to a conveyance in fee, the Bearse deed, when read as a whole, reflects the grantor's intent to transfer a lesser estate.  The deed contains a vague description clause, which fails to identify with any specificity "all the land" it purports to convey.  Moreover, the deed refers to the conveyance as a "Company right of way," which is to be used "for Rail Road purposes . . . ."  Furthermore, it does not contain a warranty clause.

Most tellingly, however, the Bearse deed includes a reservation clause, wherein the grantor reserves the privilege of cultivating the land over which the railroad's easement runs. While Georgia jurisprudence might be in conflict with itself (or, at least less clear) on other aspects of a deed, the Court cannot overlook the government's inability to point to a *single* Georgia Supreme Court case in which a deed containing a reservation clause was held to convey a fee interest instead of an easement.  The Court declines to rule in a manner here that would so clearly conflict with prevailing Georgia property law.  It will instead follow the clear instruction of *Sorrells* and *Barber*.  Accordingly, the Court holds that Jerome Bearse conveyed to the Railroad in April 1869 an easement.

### 5.   Scope of the Easement

The only remaining question is whether the scope of the easement Bearse conveyed to the Railroad contemplates its use as a public recreational trail.[20]  The Court with relative ease answers this question in the negative.  For example, the Georgia Supreme Court has found that an easement "'for the purpose of running, erecting, and establishing thereon' a railroad track or tracks" was conveyed "*solely* for a railroad right of way, and therefore conveyed to the company only an easement in said lands for that purpose . . . ."  *Crutchfield*, 191 S.E. at 470–71 (emphasis added).  In *Duggan*, "[t]he words 'for all other purposes,' construed with its associate language, does not extend further than to include all other purposes 'proper in the construction and equipment' of the named railroad."  *Duggan*, 156 S.E. at 317.  In addition, another judge of this Court, in examining a different Georgia railroad easement, concluded that "public recreational trail use is fundamentally different and broader than a commercial use devoted to the operation, construction, and maintenance of a railroad."  *Jackson v. United States*, 135 Fed. Cl. 436, 472 (2017).  The Federal Circuit has also explained:

---

[20] Because the Court is satisfied that the easement's scope did not encompass use as a recreational trail, the Court need not consider the third and final question in rails-to-trails cases: whether the easement "terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements." *Presealt II*, 100 F.3d at 1533.

When the easements here were granted . . . at the turn of the century, specifically for transportation of goods and persons via railroad, could it be said that the parties contemplated that a century later the easements would be used for recreational hiking and biking trails, or that it was necessary to so construe them in order to give the grantee railroad that for which it bargained?  We think not. Although a public recreational trail could be described as a roadway for the transportation of persons, the nature of the usage is clearly different. . . . It is difficult to imagine that either party to the original transfers had anything remotely in mind that would resemble a public recreational trail.

*Presealt II*, 100 F.3d at 1542–43.  The Court concurs.  In light of prevailing Georgia law, and the Bearse deed's express conveyance of a property interest "for Rail Road purposes," the Court is sufficiently persuaded that the grantor did not intend for the right of way to be used as a public recreational trail.

Accordingly, as two other judges of this Court similarly found in *Ansley Walk* and *Price*, the STB's conversion of the Decatur Street Belt into a public recreational trail, pursuant to the Trails Act, is beyond the terms and scope of the easement conveyed by Jerome Bearse in April 1869.  The government's action, which precludes Plaintiffs' reversionary rights in the property, constitutes a Fifth Amendment taking for which the United States is liable.  Plaintiffs are therefore entitled to Just Compensation.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for partial summary judgment and **DENIES** the government's cross-motion for summary judgment.  By no later than March 1, 2022, the parties shall file a joint status report proposing a schedule for further proceedings in this matter.

**IT IS SO ORDERED.**

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge